**Cheryl MATTSCHEI et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellant, Cross-Appellee,**

v.

**CAREER AVIATION ACADEMY et al., Third Party Defendants, Appellees.**

**Nos. 76–2759, 76–3157.**

United States Court of Appeals, Ninth Circuit.

June 21, 1979.

---

Thomas F. Schrag, Strom, Weiser, Schrag & Ott, Oakland, Cal., for plaintiffs-appellees; cross-appellants.

Mark N. Mutterperl, Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., for defendant-appellant, cross-appellee.

Peter Axelrod, Neil D. Reid, Inc., San Francisco, Cal., for third party defendants, appellees.

Before BROWNING and KENNEDY, Circuit Judges, and DUMBAULD,* District Judge.

KENNEDY, Circuit Judge:

Plaintiffs' decedent Robert Mattschei, pilot of a Cessna in communication with traffic controller Terry Conroy, died following a midair collision with a Cherokee piloted by Richard Mahon. The two pilots were approaching Hayward, California, Airport for landing, but they were in touch with different traffic controllers on separate radio channels. Plaintiffs sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674 for wrongful death.[1] Plaintiffs also named Mahon and his employer as defendants on the theory of pendent jurisdiction, but that suit was dismissed by the trial court for lack of independent federal jurisdiction.[2] The United States impleaded the same parties as third-party defendants, but on Mahon's motion they were dismissed on the ground that under California law the United States had no right to indemnity or contribution until a judgment had been entered against it. See Cal.Code of Civ.Proc. §§ 875(a) & (c), 876(a).

The trial court fixed the total damages to plaintiffs at $315,000. Applying the California law of comparative negligence, see Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), the trial judge found Mattschei 70% liable for the crash, 50% by reason of his negligence in attempting to land on the wrong runway and 20% by reason of his failure to see and avoid other traffic under Visual Flight Rules. Judgment was entered against the United States for "all of plaintiffs' damages, less that portion attributable to Mattschei," a total of 30% of plaintiffs'

---

* Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The exceptions in 28 U.S.C. § 2680 do not apply to this case. Jurisdiction is conferred by 28 U.S.C. § 1346 over "civil claims . . . for . . . death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." In the case at bar California law governs. Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

2. Although not argued by the parties, the district court's dismissal of plaintiffs' pendent claim against Mahon is open to some question. See Ortiz v. United States, 595 F.2d 65 (1st Cir. 1979). See Rosario v. American Export-Isbrandtsen Lines, Inc., 531 F.2d 1227 (3d Cir. 1976); Davis v. United States, 350 F.Supp. 206 (E.D.Mich.1972). Cf. Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); C. Wright & A. Miller, Federal Practice and Procedure §§ 1444 & 1459. Compare Ayala v. United States, 550 F.2d 1196 (9th Cir. 1977), cert. granted, 434 U.S. 814, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977), cert. dismissed, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).

damages ($94,500), with costs.[3] The trial court made no determination as to the negligence, if any, of Mahon, and applied as against the United States the California law that a tortfeasor is liable jointly and severally for the entire amount recoverable by a plaintiff, without prejudice to any rights over against other tortfeasors involved.

Both parties appeal on several grounds from the district court's judgment. We conclude: the district court applied the proper standard of care in evaluating the controller's conduct; the district court's findings of fact and application of the negligence standard to the facts were not clearly erroneous; the amount of damages awarded to plaintiffs was not clearly erroneous; under a regime of comparative negligence the Federal Tort Claims Act does not preclude holding the United States liable for more than the damage caused by its proportionate share of negligence; the trial court's dismissal of the United States' attempt to implead Mahon was improper; and further proceedings will be required.

▆ We first address the district court's finding that the controller was negligent in failing to warn Mattschei at 11:26:51 that another plane was above and behind him. Instead, the controller inquired about Mattschei's position and only at 11:26:59 did he warn Mattschei and instruct him to go around. The appellate review of a finding of negligence is governed by the clearly erroneous standard, *Miller v. United States,* 587 F.2d 991, 994 (9th Cir. 1978). Under that rule, we conclude the district court's finding must be affirmed. The district court recognized that under the Visual Flight Rules in effect at the time, pilots are responsible

> for complying with air traffic control instructions and clearance, and for providing their own separation from other air-

craft. The pilot's responsibility for separation stems from his superior ability to see aircraft close to him, and to maneuver his plane to avoid such other aircraft, and from his limited area of concern, *i. e.,* his own aircraft and the area immediately surrounding it.

While "ultimate responsibility for the safe operation of aircraft rests with the pilots, regardless of the air traffic clearance," *Hamilton v. United States,* 497 F.2d 370, 374 (9th Cir. 1974); *United States v. Miller,* 303 F.2d 703 (9th Cir. 1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 507, 9 L.Ed.2d 502 (1963), the duty to exercise due care to avoid accidents is a concurrent one resting on both the control tower personnel and the pilot. *See Hamilton, supra; Miller, supra.* The controller testified in part that when two planes are in close proximity there is a possibility of a midair collision. He further explained that while he thought there would be a "near miss" between the Cessena and the Cherokee, he did not believe the planes would actually collide. The conclusions reached by the district court after hearing all the testimony are not necessarily those which we might have reached. Still, it was permissible for the court to conclude that the possibility of an emergency or collision was sufficiently likely, and the costs of warning were sufficiently low, so that the controller should have issued a traffic advisory to Mattschei at 11:26:51. For this reason its finding is affirmed.

▆▆ Turning to damages, the district court made the following findings:

1. Within two years subsequent to January, 1973, Robert Mattschei would have been promoted to a managerial position with Caterpillar Tractor Company and would have earned an average of $22,000 per year, including fringe benefits, over his life expectancy to age 62.

---

**3.** The trial judge found Mattschei's traffic controller negligent for failing to warn him concerning the presence of the Cherokee. The controller instead asked Mattschei to "confirm you're lined up with 28 right." Seven seconds later Mattschei replied, "You told me 28 left," although he had previously twice acknowl-

edged instructions to land on runway 28 right. The controller then instructed Mattschei, "turn and go around," a maneuver requiring the Cessna to climb rather than continue its descent. The collision occurred three to five seconds later.

2. The present value of 30% of the loss of support to his family after deducting for personal consumption and federal and California income taxes is $90,000.

3. Mattschei's marriage and relationship with his [wife] and child were excellent.

4. Plaintiffs have been deprived of the care, comfort, and society of Mattschei and his household services, 30% of which has a pecuniary value of $4,500.

5. Thirty per cent of plaintiffs' total damages is $94,500.

Plaintiffs do not contest that portion of the damages allocated to loss of support, only the amount awarded for loss of care, comfort, society, and services. While courts do "seek to maintain some degree of uniformity in cases involving similar losses," *Felder v. United States,* 543 F.2d 657, 674 (9th Cir. 1976), damage awards turn on the facts of each case. "While analogies to, and comparisons with, other cases may be helpful on many types of issues, their usefulness on questions of damages is extremely limited." *United States v. English,* 521 F.2d 63, 72 (9th Cir. 1975). We have reviewed the damage cases cited by the parties, and while the award for loss of care, comfort, society, and household services appears on the low side, it is neither unreasonable nor clearly erroneous. *Felder v. United States, supra* at 663–65.

■ The most difficult issues on this appeal involve the apportionment of liability among the parties. California precedents hold that an injured plaintiff may recover the full amount of damages from any tortfeasor whose wrongful conduct was a substantial factor in causing indivisible tortious injury. He is not required to seek piecemeal recovery against numerous defendants of varying solvency and accessibility. This rule is equally applicable in California under a regime of comparative negligence as it was under the former rule of contributory negligence. *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).

*American Motorcycle* did, however, recognize that California's adoption of comparative negligence affected the apportionment of negligence liability among joint tortfeasors. Although the plaintiff's remedy of full recovery against any tortfeasor remains unimpaired, liability among multiple tortfeasors may now be apportioned on a comparative fault basis. *Id.* at 591–608, 146 Cal.Rptr. 182, 578 P.2d 899.

■ The United States argues that where a comparative negligence rule prevails, its liability is limited to its own share of the negligence which caused an injury. It cites the FTCA, which allows suit against the Government only if injury is "caused by the negligent or wrongful act or omission of any employee of the Government . . ." 28 U.S.C. § 1346(b). It argues that the statute prohibits the Government from bearing more than its share of the liability in a jurisdiction where comparative negligence provides the mechanism for establishing its share of the liability in the principal suit. We reject the Government's contention.

The statute plainly makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances" in accordance with "the law of the place where the wrongful act or omission occurred." The United States is seeking different treatment than that given to California private tortfeasors. We find no indication in the statute or its history that Congress intended to reject the doctrine adopted by the California Supreme Court that a cotortfeasor is liable to the plaintiff for the whole of an indivisible injury caused by his negligence, even if equitable indemnity is available against the other cotortfeasors.[4]

■ There is another problem in the case, however. If the principles recognized in

---

4. The cases cited by the United States do not support its position. Both *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), and *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), discuss the question whether a particular actor is a government employee. They do not address the question whether, once a government employee is acknowledged to be negligent, the Government may be required to pay the full amount of damages and then seek indemnity from other alleged tortfeasors, or whether in-

*American Motorcycle* are applicable to this case, then the United States should have been allowed to implead Mahon. *See American Motorcycle, supra.* We think that application of *American Motorcycle* on this issue should be extended to all suits in which the issue has been preserved for appeal. The principle of *Li v. Yellow Cab Co., supra,* put the parties on notice that apportionment of damages might be required among joint tortfeasors. Moreover, a second proceeding will be necessary in any event, since even if this judgment were affirmed the United States could seek contribution from Mahon and his employer. We think our holding is consistent with the probable determination of that question by the California Supreme Court, for reasons expressed by it in *Safeway Stores v. Nest-Kart,* 21 Cal.3d 322, 146 Cal.Rptr. 550, 579 P.2d 441 (1978), a case involving similar, although not identical, issues. *See also Wagner v. California,* 86 Cal.App.3d 922, 927 n.1, 150 Cal.Rptr. 489 (Ct.App.1978); *County of Ventura v. City of Camarillo,* 80 Cal.App.3d 1019, 1024, 144 Cal.Rptr. 296 (Ct.App.1978). *Compare Silveria v. Imperial Irrigation District,* 85 Cal.App.3d 705, 707–08, 149 Cal.Rptr. 653 (Ct.App.1978).[5] We therefore conclude that the case must be remanded for further proceedings.

■ The precise nature of the proceedings on remand may depend on how the district court apportioned fault at the first trial. *American Motorcycle* holds that a plaintiff is entitled to recover from any one tortfeasor all his damages minus that attributable to plaintiff's own negligence. 20 Cal.3d at 590 n.1, 146 Cal.Rptr. 182, 578 P.2d 899. The record in this case strongly suggests that Judge Renfrew followed this procedure in making his findings of proportionate liability. He ordered judgment against the United States for "all of plaintiffs' damages, less that portion attributable to Mattschei."[6] Judge Renfrew on remand should state whether he calculated damages in accordance with *American Motorcycle,* or in some other manner.

The United States has not suggested on this appeal that the finding of its negligence should be relitigated with Mattschei in the further proceedings it requests, and we agree that no necessity to relitigate that issue has been shown. Further, assuming that the district judge correctly determined Mattschei's share of fault, the $94,500 judgment against the United States is not open to relitigation.[7]

■ The United States suggests that the appropriate disposition is to remand to

---

stead the Government is liable only for its own proportionate share of the negligence.

5. Therefore we need not address the question whether our determination in this respect is controlled completely by state law. Since allocation of judicial resources is an important factor in determining whether or not a decision should be retroactive, it might be argued that federal law is determinative on the retroactivity question in a federal court, even if the substantive rights of the parties are determined by the law of the state.

6. The district court stated:

11. Applying the California law of comparative negligence, *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 532 P.2d 1226 (1975) the Court concludes that the liability for the crash should be divided as follows:

| | | |
|---|---|---|
| Pilot of Cessna 997 for misalignment | 50% | |
| Pilot of Cessna 997 for failure to see and avoid | 20% | |
| Total attributable to Mattschei | | 70% |
| Remainder for which the air traffic controller is responsible | | 30% |
| | | 100% |

12. Defendant herein should be held liable to pay all of plaintiffs' damages, less that portion attributable to Mattschei. In other words, the United States of America should pay 30% of the total damages found.

7. Under California law a plaintiff need not proceed against all tortfeasors. Moreover, as the court in *American Motorcycle* stated, "plaintiff's actual damages do not vary by virtue of the particular defendants who happen to be before the court," 20 Cal.3d at 590 n.2, 146 Cal.Rptr. at 189 n.2, 578 P.2d at 906 n.2. The United States at the trial had an opportunity to present all of its evidence showing that Mattschei was responsible for the accident and that the controller was not negligent. The United States thus has no grounds to complain about either the finding of negligence, or the amount for which it was held responsible, assuming that the district court followed the procedure outlined in *American Motorcycle* for determining damages.

allow the Government to seek equitable indemnity from Mahon and his employer for their comparative fault.[8] We agree in general with this suggestion, and think that the details of the proceeding, such as whether Mattschei need be included as a party,[9] are best left to the judgment of the district court, after the parties have further stated their position.[10]

For the above reasons, the decision of the district court is affirmed in part, reversed in part, and remanded.

**8.** The United States argues that Mahon must have been at least 20% negligent, since Mahon's view of Mattschei's plane was comparable, although not exactly so, to Mattschei's view of Mahon's plane, and the trial court apportioned 20% of the negligence to Mattschei for failure to see Mahon.

**9.** Since the liability of the United States to Mattschei will not be reopened on remand, and the principal remaining issue is allocation of damages between Mahon and the United States, plaintiffs' presence as parties in the further proceedings would appear unnecessary. Compare Adler, *Allocation of Responsibility After American Motorcycle Association v. Superior Court*, 6 Pepperdine L.Rev. 1, 11 (1978) (As a tactical matter, defendant filing a cross-complaint against cotortfeasor should join plaintiff; "[o]therwise, an adjudication of responsibility as to the cross-defendants would not be binding upon [the plaintiff].").

**10.** We assume that, despite perhaps inadvertent language in some California lower court opinions, see, e. g., *Dept. of Transportation v. Superior Court*, 88 Cal.App.3d 689, 152 Cal. Rptr. 177 (1979); *County of Ventura v. City of Camarillo*, 80 Cal.App.3d. 1019, 144 Cal.Rptr. 296 (1978), Mahon in the proceedings on remand is not bound by the district court's apportionment of fault in the original action. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). *See also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

A second collateral estoppel issue facing the district court on remand will be the extent to which the United States, in light of *Parklane Hosiery, supra*, can be estopped by Mahon from relitigating issues determined adversely to it in the action between Mattschei and the United States.