Michael FOSS, a minor, et al.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 79-3119.

United States Court of Appeals,
Ninth Circuit.

July 10, 1980.

Eloise E. Davies, Dept. of Justice, Washington, D. C., for defendant-appellant.

Marshall L. Foreman, Jr., San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS, SNEED and ALARCON, Circuit Judges.

CHAMBERS, Circuit Judge:

This Federal Tort Claims Act wrongful death action was brought by the widow and children of Glenn Foss, a private pilot who was killed when his small aircraft crashed at the airport at Fullerton, California. The district court's findings of fact, which we paraphrase, recite that in 1968 the F.A.A. prepared and disseminated a traffic pattern for the Fullerton Airport that instructed pilots, when flying in the course and at the location that Foss was flying, to maintain an altitude of 800 feet above mean sea level. On January 29, 1970, while this traffic pattern was in effect, and while Foss was flying in the pattern with F.A.A. control tower clearance, his light aircraft collided with a radio tower at a point about ten feet from its top, or approximately 821 feet above mean sea level.

The district court found that the employees of the F.A.A. were negligent in publishing a traffic pattern calling for an 800 foot downwind approach when there was an 819 foot radio tower less than two miles away. It also found that the employees of the F.A.A. were negligent in failing to revise the traffic pattern after being

warned of the danger by F.A.A. superiors at least ten months prior to the fatal accident.

The district court found that at the time of the accident "visibility from the downwind leg in the direction of the KFI tower was impaired by the position of the sun and a haze layer." Despite this, the tower "did not broadcast any warning concerning the hazard of the KFI radio tower during the period of reduced visibility due to the sun position and haze layer . . . ." The court found specifically that at the time of the accident "the sun was low on the horizon and the KFI tower was generally between pilot Foss and the sun." It added that the "rays of the sinking sun could adversely affect the vision of an airplane pilot at the time and place of the accident," and that F.A.A. control tower personnel were negligent "in failing to broadcast a general warning to all aircraft in the area regarding the hazard of the KFI tower during the period of reduced visibility due to the sun position and a haze layer."

The F.A.A. comes close to conceding that the district court findings of negligence on the part of F.A.A. employees are not susceptible of a successful challenge on appeal. But it never really says so. Therefore, to eliminate any doubt on that score, we state here that each of those findings is well supported by the record and there was nothing approaching clear error. Rule 52(a), F.R.Civ.P.

The basic thrust of the government on appeal is that the judge erred in finding that Foss, the pilot, was not also negligent. The district judge found specifically that the F.A.A. had not carried its burden of proof as to this affirmative defense. The F.A.A. argues that there was contributory negligence as a matter of law and that the district judge "misperceived the respective duties of air traffic controllers and pilots" as imposed by F.A.A. regulations. It is the F.A.A.'s contention that if the trial judge had applied the correct standard, he "would necessarily have concluded that Foss was negligent in the operation of the aircraft . . . even though the F.A.A. and its traffic controllers were also negligent." If this were indeed the case, the "clear error" test of Rule 52(a) would not apply. We would simply be presented a question of law which we would review and then determine whether application of the incorrect standard by the trial judge resulted in a judgment that was clearly erroneous. *Miller v. United States*, 587 F.2d 991 (9th Cir. 1978). In this case, if an incorrect standard had been used and if, indeed, Foss was negligent, then the damages to Foss's survivors would be diminished accordingly under California's comparative negligence law as established in *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975).

The F.A.A. argues that under California law any violation of statute, or agency regulation, is negligence per se,[1] and that the pilot in this case violated applicable regulations of the F.A.A. Appellant argues that the district judge erred in failing to con-

---

1. § 669 of the California Evidence Code states:

"(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance or regulation was adopted.

"(b) This presumption may be rebutted by proof that:

"(1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or

"(2) The person violating the statute, ordinance, or regulation was a child and exercised the degree of care ordinarily exercised by persons of his maturity, intelligence, and capacity under similar circumstances, but the presumption may not be rebutted by such proof if the violation occurred in the course of an activity normally engaged in only by adults and requiring adult qualifications."

sider this aspect of the pilot's duty and thus erred in finding that the F.A.A. had not carried its burden of proving contributory negligence. We cannot agree with appellant's argument as to negligence per se.

■ We do not agree that the agency demonstrated that the pilot violated any regulations. The specific regulations on which the F.A.A. relies state that the "pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of the aircraft" (14 CFR § 91.3) and he must familiarize himself "with all available information" concerning a flight (14 CFR § 91.5).[2] It is the F.A.A.'s position that under these regulations the pilot in this case had a duty,

" . . . as a matter of law, to know of the presence, location and height of the KFI tower; he had a duty as a matter of law, to see and avoid the tower; and he had a duty, as a matter of law, to compensate for any restriction as to visibility which may have existed."

We cannot accept this very broad interpretation of the F.A.A. regulations. Reduced to its essentials, the F.A.A. argument is that despite its own admitted negligence the pilot is always in a position of "final authority" and has the duty to "familiarize himself with information," and thus whenever there is a crash he will always have been negligent as a matter of law because he will have violated these regulations.[3]

In *Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir. 1972), this Court considered 14 CFR § 91.3, and held that the standard of care, as to ground aviation personnel and the pilot, is "concurrent" and that both are responsible for the safety of the passengers:

"The pilot is in command of his aircraft. He is directly responsible and has final authority for its operation. See 14 CFR § 91.3(a). However, before the pilot is held legally responsible for his aircraft, he must know those facts which are material to the operation of his plane. *An important source of this information is tower personnel, air traffic controllers . . . .* The air traffic controller is required to give all information and warning specified in his manuals. This duty to warn is based on the simple tort principle that once the Government has assumed a function or service, it is liable for negligent performance." (Emphasis supplied.)

We find nothing in *Spaulding* that suggests that concurrent responsibility always results in concurrent liability, or compels a conclusion that the pilot is always negligent when an air crash occurs. Indeed, *Spaulding* indicates that a pilot is to look to air traffic controllers for the information that he requires and which it is the duty of the controllers to furnish. There may be instances when the pilot is entitled to rely in part, or totally, on the F.A.A. or its air controllers for the information he needs (e. g. traffic patterns, oral advices, oral directives, etc.). There may be other instances where it would not be reasonable to do so.

---

2. 14 C.F.R. 91.3(a) states:

"(a) The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."

14 C.F.R. 91.5 states:

"Each pilot in command shall, before beginning a flight, familiarize himself with all available information concerning that flight. This information must include, for a flight under IFR or a flight not in the vicinity of an airport, available weather reports and forecasts, fuel requirements, alternatives available if the planned flight cannot be completed, and any known traffic delays of which he has been advised by ATC."

3. We note merely in passing that if the F.A.A. rationale were accepted as to the scope of its regulations, we would in effect be viewing them as exculpatory weapons by which the F.A.A. is permitted to immunize itself from its own negligence—totally in contributory negligence jurisdictions and at least partially in comparative negligence jurisdictions such as California.

Several courts have, of course, affirmed awards to pilots or their survivors in litigation against the F.A.A. based on alleged negligence by air traffic controllers. See e.g. *Martin v. United States*, 586 F.2d 1206 (8th Cir. 1978); *Deweese v. United States*, 576 F.2d 802 (10th Cir. 1978); *Neal v. United States*, 562 F.2d 338 (5th Cir. 1977).

We reject the contention that there was contributory negligence as a matter of law because the pilot did not avoid this crash, whether by obtaining prior knowledge of the tower and its location and height, or by seeing it as he was in flight and recognizing its location and height, or by assuring that he would have full, unobstructed vision at all times.

As we discussed above, it is accepted for our purposes, that the F.A.A. traffic pattern was negligently drafted. And it is accepted that the air controller failed in his duty to broadcast a warning of the dangerous condition caused by the position of the sun and the haze layer, which together might have affected the vision of someone looking in the direction of the radio tower. Yet it is the argument of the F.A.A. that Foss was contributorily negligent because he did not somehow compensate for the resulting restricted visibility.

The hypothesis offered by appellees for the precise cause of the collision was that Foss was momentarily blinded by the position of the sun and the existence of the haze layer. The district judge found that the sun's position and the existence of the haze layer "could adversely affect the vision of an airplane pilot at the time and place of the accident." He was clearly entitled to accept this hypothesis over others urged by the F.A.A. and to resolve conflicting testimony in so doing. *Neal v. United States*, 562 F.2d 338 (9th Cir. 1977). Thus, claims that Foss ought to have maintained a better lookout, that he "must have known" about the existence of the tower, that the "weight of the evidence" is that the tower would have been visible to him, that the sun and haze only "partially obscured" his vision, are all fact questions that were resolved against the F.A.A.

It is important to distinguish this case from others which arose on different facts. This is not a case where a pilot's vision was obstructed by a "blind spot" due to the configuration of his own aircraft, a condition of which he should have been aware and which he could have compensated for by maneuvering his head or the aircraft.

Cf. *Rudelson v. United States*, 431 F.Supp. 1101 (C.D.Cal.1977), aff'd 602 F.2d 1326 (9th Cir. 1979). And this is not a case where a pilot with normal eyesight failed to keep a proper lookout, having a recognized ability that is superior to that of the air controllers to see aircraft that are close to him and to maneuver to avoid them. *Mattschei v. United States*, 600 F.2d 205, 208 (9th Cir. 1979); *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978). The case at hand is one in which (if appellees' hypothesis is accepted) the pilot was temporarily blinded, due to a transitory weather condition.

There may be instances when it is negligent of a pilot to place himself in a position where he can become temporarily blinded, but the district judge heard the evidence and found that the F.A.A. had not carried its burden of proving pilot negligence in this case. The record supports the district judge's findings. There was extensive expert testimony as to the existence and effect of the sun's rays and the haze layer on the particular day and at the particular time, as they would have affected a pilot of Foss's age and experience, given his location and the speed of his aircraft. In particular, there is expert testimony as to the effect of the pilot's depth perception and his ability to distinguish colors. As discussed above, it was particularly within the function of the trial judge, as trier of the facts, to hear the evidence and resolve conflicting testimony.

We reject the appellant's argument that the district judge applied the wrong standard in judging the conduct of the pilot. We reject the argument that there was contributory negligence as a matter of law. We find no clear error in the trial judge's findings. Rule 52(a), F.R.Civ.P.

Affirmed.