Perry D. POTTER, Plaintiff,

v.

**RAIN BROOK FEED COMPANY, INC.,**
**a California corporation, et al.,**
**Defendants.**

**And Related Cross-Actions.**

**No. Civil S–81–34 LKK.**

United States District Court,
E. D. California.

Jan. 13, 1982.

Thomas I. McKnew, Jr., Richard L. Rosett, Los Angeles, Cal., for defendant Atchison, Topeka & Santa Fe Railway Co.

Leo M. O'Connor, Inc., A Professional Corp., Sacramento, Cal., for plaintiff.

Memering & DeMers, Sacramento, Cal., for defendants Rain Brook Feed Co., Inc. and Stockton Hay & Grain, Ltd.

## ORDER

KARLTON, District Judge.

Plaintiff Potter brings this action to recover damages for personal injuries allegedly sustained while employed by the defendant and third-party plaintiff Atchison, Topeka & Santa Fe Railway Co. (Santa Fe). Potter suffered his injuries when a Santa Fe locomotive collided with a grain truck allegedly owned and operated by the defendants and third-party defendants Rain Brook Feed Co., Inc. and Stockton Hay & Grain, Ltd. (hereafter referred to collectively as Rain Brook). Potter seeks relief against Santa Fe under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (FELA), and against Rain Brook under state tort law. Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1331(b). The matter is presently before the court on Rain Brook's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Before addressing the merits of Rain Brook's motion, a brief procedural history of this action is in order.

In his original and first amended complaint, Potter named Santa Fe and Rain Brook as parties defendant, alleging that his state law claims against Rain Brook fell within the court's pendent jurisdiction. Shortly after Potter brought suit, Santa Fe filed a third-party complaint against Rain Brook, seeking indemnification and recovery for property damage allegedly sustained in the collision between the locomotive and the grain truck. Rain Brook then moved to dismiss both the third-party complaint and Potter's complaint for lack of subject matter jurisdiction. Rain Brook premised its motion to dismiss the third-party property damage action on the absence of diversity of citizenship between itself and Santa Fe. In response, Santa Fe sought and obtained leave to amend its complaint to allege facts sufficient to establish jurisdiction under the federal diversity statute, 28 U.S.C. § 1332, and, on that basis, the motion to dismiss was denied. In support of its motion to dismiss Potter's complaint, Rain Brook maintained that Potter's failure to plead an independent basis of federal jurisdiction over his state law claim rendered Rain Brook a "pendent party" and therefore not within the court's subject matter jurisdiction under Ninth Circuit law. In opposition, Potter argued that Rain Brook's status as a third-party defendant subject to independent federal jurisdiction operated to confer "ancillary" jurisdiction over his original complaint under Fed.R.

Civ.P. 14(a).[1] Because the plaintiff's complaint per force was filed prior to Santa Fe's third party complaint, the court refused to consider its existence as a retroactive basis for jurisdiction and, on that basis, dismissed plaintiff's action against Rain Brook without prejudice, holding that *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977) precluded the exercise of jurisdiction over a "pendent party" not otherwise subject to federal jurisdiction. At the same time, Potter was granted leave to amend to allege the existence of the third-party complaint. By his second amended complaint, Potter has done so and again asserts that this court possesses power to adjudicate his state law claim against Rain Brook under its "ancillary" jurisdiction. Rain Brook disagrees and now moves to dismiss Potter's second amended complaint for lack of subject matter jurisdiction.

Given the absence of diversity of citizenship between Potter and Rain Brook, jurisdiction over plaintiff's state claim, if it exists at all, must be predicated on a theory of ancillary or pendent jurisdiction. Although the Supreme Court recently stated that it is not "necessary to determine ... whether there are any 'principled' differences between pendent and ancillary jurisdiction; ..." *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 370 n.8, 98 S.Ct. 2396, 2401 n.8, 57 L.Ed.2d 274 (1978), *quoting Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976), the Ninth Circuit's rejection of "pendent party" jurisdiction requires a brief explanation of the distinctions traditionally drawn between these jurisdictional theories. Both doctrines involve "the same generic problem: under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same state?" *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. at 370, 98 S.Ct. at 2401. Ancillary jurisdiction is most commonly exercised over cross-claims, counterclaims, and third-party claims—claims asserted "by a *defending* party hailed into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404 (emphasis added). In the typical pendent jurisdiction context, on the other hand, a *plaintiff* seeks to have a federal court decide a state law claim which shares a "common nucleus of operative fact" with a federal question action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Courts have identified two distinct species of pendent jurisdiction. "Pendent *claim*" jurisdiction exists when a plaintiff raises parallel state and federal claims against the *same* defendant. So-called "pendent *party*" jurisdiction, in contrast, typically involves not only a state claim which is appended to the action that provides the anchoring source of federal jurisdiction, but requires for its resolution the joinder of an additional party over whom there is no independent basis of federal jurisdiction. *See Ayala v. United States*, 550 F.2d 1196, 1198 (9th Cir. 1977).

■ None of these jurisdictional theories comfortably embraces the procedural and jurisdictional alignment presented by this motion. Plaintiff does not assert his state law claim from a defensive posture, nor is the claim logically dependent upon the outcome of the federal question action. Rather, Potter's state law claim is logically separate and independent of his FELA claim and, therefore, must be distinguished from those claims over which ancillary jurisdiction is traditionally exercised. Nor can the jurisdictional question here be resolved by application of traditional pendent claim or pendent party theory. Although Rain

---

1. Rule 14(a), which governs third-party practice, specifically permits the plaintiff to "assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, ..." The Federal Rules, however, are not jurisdictional; Rule 14(a) does not by itself extend the jurisdiction of the federal courts. *See* Fed.R.Civ.P. 82. Rather, absent an independent jurisdictional basis, a Rule 14(a) joinder must satisfy the requirements of pendent or ancillary jurisdiction.

Brook is in this lawsuit under an independent jurisdictional provision, Potter's state claim against it is not a "pendent claim," in the usual sense, since Rain Brook is not the same party against whom the federal claim is raised. Nor is Rain Brook, in the ordinary sense, a pendent party. Although clearly a pendent party for the purpose of its first motion to dismiss, Rain Brook's procedural stance in this lawsuit has changed. For purposes of the present motion, Rain Brook is no longer a party who would not be a party to this lawsuit but for plaintiff's nonfederal claim. Rain Brook is now a third party defendant subject to the court's jurisdiction under an independent jurisdictional predicate—the federal diversity statute, 28 U.S.C. § 1332—based on the diversity of citizenship between Rain Brook and the third party plaintiff Santa Fe. Although not the party against whom plaintiff's anchoring federal claim is raised, Rain Brook is nevertheless implicated in this litigation in connection with a claim for which there is an independent, statutory basis of federal jurisdiction.

Viewed as such, the procedural and jurisdictional alignment of the parties to this action falls into (or perhaps bridges) the factual, and in the Ninth Circuit, the legal crevasse separating the discrete theories of pendent claim and pendent party jurisdiction. Given the Ninth Circuit's rejection of pendent party theory, the threshold question raised by the present motion is whether Rain Brook is to be viewed as a "pendent party" in relation to plaintiff's state law claim notwithstanding the procedural and jurisdictional alignment now properly before the court or, given the existence of an independent basis of jurisdiction over Rain Brook, whether plaintiff's state law claim may properly be viewed as a "pendent claim" and therefore within reach of this court's pendent jurisdiction. Stated differently: Does Ninth Circuit law permit a plaintiff to assert a state law claim against a party who, although not the party against whom plaintiff's anchoring federal claim is raised, is subject to federal jurisdiction under an independent, statutory jurisdictional predicate as a third party defendant? The question is complex and, indeed, appears to be a question for which Ninth Circuit precedent provides no answer.

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court identified two prerequisites of pendent party jurisdictional power:

> Before it can be concluded that [pendent party] jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

427 U.S. at 18, 96 S.Ct. at 2422. Standing virtually alone among federal courts in its rejection of pendent party theory, the Ninth Circuit condemns pendent party jurisdiction not upon "ferreted congressional disinclination," but rather upon "a more fundamental constitutional grant of Article III.[2] *Ayala v. United States*, 550 F.2d 1196, 1199–1200 (9th Cir. 1977), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). My discussion of the Ninth Circuit's position must begin with the Supreme Court's seminal decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which is the source of modern pendent jurisdictional theory. In *Gibbs*, the plaintiff raised parallel federal and state claims against the same defendant. In affirming the district court's exercise of pendent jurisdiction over the state law claim, the Supreme Court eschewed the "unnecessarily grudging" approach of earlier precedent in resolving the question of the reach of pendent jurisdiction under Article III. *Gibbs'* crucial holding reads as follows:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the laws of the United States, and Treaties made, or which shall be made, under

---

2. U.S.Const. art. III, § 2, cl.1, provides in pertinent part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States and Treaties made, or which shall be made under their authority; . . ."

their Authority,...' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original; footnote and citation omitted). By its language and reasoning, *Gibbs* appears to delineate the constitutional limits of federal judicial power under Article III. Although limited in its facts to the exercise of "pendent claim" jurisdiction, post-*Gibbs* courts and commentators almost uniformly agree that *Gibbs'* Article III analysis applies with equal force to "pendent party" jurisdiction as well.[3] In *Hymer v. Chai*, 407 F.2d 136 (9th Cir. 1969), however, the Ninth Circuit read *Gibbs* more narrowly, apparently finding *Gibbs'* "common nucleus of operative fact" test inappropriate in the pendent party context. While recognizing that "[p]endent jurisdiction was devised to avoid the waste and inefficiency resulting from fragmenting a single action and dividing the pieces into separate proceedings before the state and federal courts ...," the *Hymer* court held without elaboration that "[j]oinder of claims, not joinder of parties, is the object of the doctrine." 407 F.2d at 137. *See also Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969).

Notwithstanding the increasing weight of contrary authority following *Gibbs*, the Ninth Circuit on two subsequent occasions again rejected pendent party jurisdictional theory, and each time its decision was affirmed by the Supreme Court on an alternate ground. *Aldinger v. Howard*, 513 F.2d 1257 (9th Cir. 1975), *aff'd* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Moor v. Madigan*, 458 F.2d 1217 (9th Cir. 1972), *aff'd sub nom. Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).[4]

In affirming *Aldinger*, the Supreme Court did once again address the "subtle and complex question with far-reaching implications" posed by pendent party jurisdiction. 427 U.S. at 2–3, 96 S.Ct. at 2415. After noting that "[t]he situation with respect to the impleading of a new party ... strikes us as being both factually and legal-

---

**3.** Cases extending *Gibbs* to "pendent party" jurisdiction include: *State of North Dakota v. Merchants National Bank & Trust Co.*, 634 F.2d 368, 370–74 (8th Cir. 1980); *Bowers v. Moreno*, 520 F.2d 843, 846–48 (1st Cir. 1975); *Florida E. Coast Ry. Co. v. United States*, 519 F.2d 1184, 1193–96 (5th Cir. 1975); *Curtis v. Everette*, 489 F.2d 516, 519–20 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Almenares v. Wyman*, 453 F.2d 1075, 1083 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809–11 (2d Cir. 1971); *Connecticut General Life Ins. Co. v. Craton*, 405 F.2d 41, 48 (5th Cir. 1968); *Irwin v. Calhoun*, 522 F.Supp. 576, 580–81 (D.Mass.1981); *Dumansky v. United States*, 486 F.Supp. 1078, 1082–86 (D.N.J.1980) *see also*: Comment, *Federal Pendent Party Jurisdiction and United Mine Workers v. Gibbs-Federal Question and Diversity Cases* 62 U.Va.L. Rev. 194 (1976); Comment, *Pendent and Ancillary Jurisdiction: Towards a Synthesis of Two Doctrines*, 22 U.C.L.A.L.Rev. 1263 (1975); For-

tune, *Pendent Jurisdiction—The Problem of "Pendending Parties*," 34 U.Pitt.L.Rev. 1 (1972); *Cf.* Currie, *Pendent Parties*, 45 U.Chi.L.Rev. 753, 753–55 (1978).

**4.** After citing numerous cases applying *Gibbs'* Article III analysis in the pendent party context, the *Moor* court expressly questioned the validity of *Hymer*, observing that "*Hymer* stands virtually alone against this post-*Gibbs* trend in the courts of appeals, and significantly *Hymer* was based on the court of appeals' earlier decision in *Kataoka v. May Department Stores Co.*, 115 F.2d 521 (9th Cir. 1940), a decision which predated *Gibbs* and the expansion of pendent jurisdiction beyond the narrow limits set by *Hurn v. Oursler*, [289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)]." 411 U.S. at 713–14, 93 S.Ct. at 1798. Nevertheless, the Court declined to reach the "subtle and complex question with far-reaching implications" posed by pendent party jurisdiction. 411 U.S. at 715, 93 S.Ct. at 1799.

ly different than the situation facing the Court in *Gibbs*. . . ." 427 U.S. at 14, 96 S.Ct. at 2420, the Court observed that "[i]f the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim." 427 U.S. at 18, 96 S.Ct. at 2422. Significantly, the legal difference raising the "more serious obstacle" recognized in *Aldinger* was not constitutional. Rather, the Court emphasized its concern that "the extension of *Gibbs* to this kind of 'pendent party' jurisdiction . . . presents rather different *statutory* jurisdictional considerations." 427 U.S. at 15, 96 S.Ct. at 2421 (emphasis added). Thus, the Court held that even assuming satisfaction of *Gibbs'* "constitutional minimum" standards, when pendent party jurisdiction is asserted "a federal court must satisfy itself . . . that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422. Finally, the *Aldinger* Court expressly declined "to lay down any sweeping pronouncement upon the existence or exercise of [pendent party] jurisdiction." 427 U.S. at 18, 96 S.Ct. at 2422. Rather, the Court specifically emphasized that "[o]ther statutory grants and other alignments of parties and claims might call for a different result." *Id.*

Notwithstanding *Aldinger's* apparent adherence to the *Gibbs'* Article III standards, and its implicit command that pendent party jurisdictional questions be considered on a statute-by-statute, case-by-case basis, the Ninth Circuit subsequently reaffirmed its per se rejection of pendent party theory in *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).[5] In *Ayala*, the court read *Aldinger*, "grounded as it was on a congressional disinclination," as merely "another avoidance of the ultimate question of constitutional power." 550 F.2d at 1200. Stressing *Hymer v. Chai's* admonishment that "joinder of claims, not joinder of parties, is the object of the doctrine," the court held without explanation that "*Hymer's* rejection of pendent party theory is not based on a ferreted congressional disinclination but rather rested on a more fundamental constitutional consideration" under Article III. 550 F.2d at 1199–1200.

The precise nature of this constitutional consideration, however, remains unclear. Notwithstanding its enduring concern with Article III's limited jurisdictional grant, the Ninth Circuit has yet to articulate its constitutional objections to pendent party theory. Nor has either that court nor the Supreme Court identified a precedential or doctrinal basis upon which to distinguish pendent claim from pendent party claim jurisdiction on constitutional grounds.[6] In

5. *See also: Munoz v. Small Business Administration*, 644 F.2d 1361, 1365–66 (9th Cir. 1981); *Libby, McNeill & Libby v. City National Bank*, 592 F.2d 504, 510 (9th Cir. 1978); *Blake v. Pallan*, 554 F.2d 947, 957–58 (9th Cir. 1977); *Cf. Mattschei v. United States*, 600 F.2d 205, 207 n.2 (9th Cir. 1979); *see* note 7, *infra.*

6. In *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Supreme Court considered another variant of the pendent party question but again avoided the constitutional issue. In *Kroger*, plaintiff, an Iowa citizen, sued OPPD, a citizen of Nebraska, under the federal diversity statute. Thereafter, OPPD filed a third-party complaint against Owen, a Nebraska corporation with, as was later discovered, its principal place of business in Iowa. Plaintiff then successfully moved to amend its complaint to add a claim against the third-party defendant Owen. After summary judgment was granted

in OPPD's favor on the original claims, plaintiff proceeded to trial against Owen. On the third day of trial, Owen moved to dismiss for lack of subject matter jurisdiction on the ground that plaintiff and Owen were citizens of the same state. Notwithstanding the absence of diversity, the motion was denied. In affirming the district court's ruling, the Eighth Circuit held that because plaintiff's claims against OPPD and Owen arose from a common nucleus of operative fact, the exercise of ancillary or pendent jurisdiction over plaintiff's nonfederal claim against Owen was not barred by Article III under *Gibbs*. The Supreme Court reversed. Following *Aldinger's* mode of analysis, the Supreme Court assumed satisfaction of *Gibbs'* constitutional "common nucleus of operative fact" requirement, but held that the legislative and judicial history of the federal diversity statute evidenced a congressional disinclination to allow a plaintiff to assert nonfederal claims

the absence of such analysis, *Ayala* and its predecessors provide little guidance in determining whether Article III considerations preclude the exercise of pendent jurisdiction in the circumstances of this case, since these cases, in a significant aspect, are factually distinguishable from the case at bar.

The facts of *Ayala* are exemplary. In that case, numerous plaintiffs brought separate actions against the United States under the Federal Tort Claims Act. Several of these plaintiffs sought to name Pullman, Inc. as an additional party defendant. Some based jurisdiction over Pullman on diversity of citizenship. The others, unable to meet the requirements of the federal diversity statute, attempted to join Pullman to their own federal question action as a pendent party defendant, or, alternatively, to intervene as pendent party plaintiffs in those actions brought against Pullman by plaintiffs able to satisfy federal diversity requirements. 550 F.2d at 1198. Under either theory, the exercise of federal jurisdiction over Pullman meant the joinder of a completely new party not otherwise connected with any claim over which there existed an independent basis of federal jurisdiction. In this case, in contrast, both plaintiff and Rain Brook are already in the lawsuit in connection with federally cognizable claims. The exercise of jurisdiction over plaintiff's nonfederal claim would not require, as it did in *Ayala*, the joinder of a party who would not otherwise be in federal court except at plaintiff's behest. In fact, Rain Brook is properly before this court in this very action on the basis of independent federal jurisdiction and is required by virtue thereof to defend against a claim substantially identical to that raised against it by plaintiff. The threshold issue

here, of course, is whether the existence of independent federal jurisdiction over Rain Brook as a third party defendant distinguishes this case from *Ayala* not only as a matter of fact, but as a matter of law. According to authority from another circuit, the existence of such jurisdiction is of crucial constitutional moment.

In *Ortiz v. United States*, 595 F.2d 65 (1st Cir. 1979), the First Circuit considered the existence of pendent jurisdiction in a situation procedurally identical to that at bar. Plaintiffs there brought suit against the United States under the Federal Tort Claims Act. The government subsequently filed a third party complaint against Hospital Mimiya for indemnification. The third party complaint was bottomed on an independent federal jurisdictional provision, 28 U.S.C. § 1345. Thereafter, plaintiffs moved the district court for leave to amend their own complaint to add a nonfederal claim against the third party defendant Mimiya. Citing the Ninth Circuit's decision in *Ayala*, the district court held that it lacked jurisdictional power under Article III to entertain the nonfederal claim and, on that ground, denied the motion. 595 F.2d at 71 n.8. On appeal, the First Circuit reversed. According to that court, the constitutional impasse raised by *Ayala* is traversed when an otherwise "pendent party" is already in the lawsuit as a party to a third party action founded upon an independent jurisdictional foundation. After an exhaustive analysis of the relevant Supreme Court precedents, the *Ortiz* court alluded to the Supreme Court's avoidance of the Article III question posed by pendent party jurisdiction, and held as follows:

> We, too, need not reach the difficult question whether the district court would have power under Article III to join a

against a nondiverse party in actions jurisdictionally premised on diversity of citizenship. Notwithstanding the procedural similarity between *Kroger* and the instant case, the *Kroger* decision rests upon the Supreme Court's strict reading of the diversity statute and, therefore, is not dispositive of this FELA based action. Moreover, in *Kroger* the third-party action was not bottomed on a separate basis of federal jurisdiction. Rain Brook, in contrast, is proper-

ly subject to federal jurisdiction under an independent jurisdictional statute. *See Ortiz v. United States*, 595 F.2d 65, 67–8 (1st Cir. 1979) (distinguishing *Kroger* on identical grounds). A major distinction between this situation and the problem posed in *Kroger* is, that whatever the disposition is of the instant motion, all parties will remain before the court in this litigation, each with its own proper independent jurisdictional basis.

nonfederal party as well as here a nonfederal claim .... In the present case, the entity against which the nonfederal claim is raised is already a party as the result of the United States' third-party complaint which was based upon an independent ground of federal jurisdiction, 28 U.S.C. § 1345 .... True, Hospital Mimiya is not the same party as the one against whom the anchoring federal claim was raised, but we do not think that this fact is by itself particularly significant. Mimiya is already in the case on the basis of independent federal jurisdiction so there is no need to decide whether pendent power can be stretched to the point of bringing a wholly new, nonfederal party into a lawsuit. In the present circumstances at least—and without purporting to decide what the outcome would be were Hospital Mimiya not already a party to the proceedings on a separate jurisdictional basis—we hold that the *Gibbs* standards are applicable here.

595 F.2d at 70–71 (citations omitted). *See also Dumansky v. United States*, 486 F.Supp. 1078, 1084–86 (D.N.J.1980 following *Ortiz*).

Significantly, *Ortiz* expressly distinguished *Ayala* as factually inapposite, recognizing that "in *Ayala*, ... the parties against whom the nonfederal claims were raised would not have been a party to the suit but for the nonfederal claims." 595 F.2d at 71 n.8. According to *Ortiz*, the jurisdictional question answered negatively by *Ayala, i.e.* whether pendent jurisdiction

extends to the joinder of a completely new party, is constitutionally distinct and separable from that posed by the joinder of a claim against a party who, although not the party against whom the federal question action is raised, is nevertheless subject to independent federal jurisdiction. Under *Ortiz*'s analysis, the existence of any independent basis of federal jurisdiction over the party against whom a plaintiff asserts a nonfederal claim is sufficient to invoke the "common nucleus of operative fact" test of *Gibbs* and eviscerates whatever constitutional problems might exist under "pure" pendent party theory. Although this precise issue has not been addressed by the Ninth Circuit, the distinction between cases such as the instant one where the defendant is already before the court on a separate federal basis and the situation presented by *Ayala* has been noted and reserved for a proper case.[7] Unfortunately this court is unable to reserve the question for this motion requires resolution of the issue. As I shall attempt to demonstrate below, the holding of *Ortiz* appears to stand on firm doctrinal foundations.

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), Justice Rehnquist identified a constitutionally relevant distinction between pendent claim and pendent party jurisdiction, explaining that "the addition of a *completely new* party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction...." 427

---

7. Significantly, in a recent dictum, the Ninth Circuit by reference expressly recognized the possible validity of the distinction drawn in *Ortiz*. In *Mattschei v. United States*, 600 F.2d 205 (9th Cir. 1979), the district court faced a procedural and jurisdictional alignment of parties identical to that considered in *Ortiz*. In *Mattschei*, plaintiffs' decedent, the pilot of a small aircraft, died following a midair collision with a plane piloted by Mahon. Claiming that the collision resulted from the negligence of air traffic controllers, plaintiffs sued the United States under the Federal Tort Claims Act for wrongful death. Plaintiffs also named Mahon and his employer as defendants on a theory of pendent jurisdiction. After plaintiffs brought suit, the United States impleaded Mahon and

his employer as third-party defendants. As in *Ortiz*, jurisdiction over the third-party action rested on an independent jurisdictional statute, 28 U.S.C. § 1345. The district court subsequently dismissed plaintiffs' nonfederal claims for lack of subject matter jurisdiction. On appeal, plaintiffs failed to raise the pendent jurisdictional issue. Nevertheless, the Ninth Circuit offered the following observation: "Although not argued by the parties, the district court's dismissal of plaintiffs' pendent claim against Mahon is open to some question." 600 F.2d at 207 n.2. Significantly, the accompanying citation reads, in part, as follows: *See Ortiz v. United States*, ... *Compare Ayala v. United States* ....

U.S. at 15, 96 S.Ct. at 2420 (emphasis added). A plaintiff who asserts a claim against a third party defendant already subject to federal jurisdiction, as a practical matter, does not seek to implead a "completely new" party to the lawsuit but only to assert an additional claim. Consequently, the exercise of jurisdiction over that claim would no more transgress Article III's limited jurisdictional grant than did the exercise of pendent jurisdiction expressly affirmed in *Gibbs*. Indeed, the joinder of a claim against a party properly in the lawsuit under an independent jurisdictional provision seems considerably more consistent with *Gibbs'* Article III analysis, as a constitutional matter, than do the liberal joinder provisions of Rules 13(a), 13(h) and 14(a) which expressly sanction the joinder of completely new, nonfederal parties for purposes of counterclaims, crossclaims, and third party claims. These provisions, as do the doctrines of pendent and ancillary jurisdiction, rest on considerations of convenience, judicial economy, and fairness to the litigants—considerations found in *Gibbs* to be inherent in and entirely consistent with Article III. These considerations are particularly compelling where, as here, the party against whom the nonfederal claim is raised is properly in federal court to litigate an identical nonfederal claim against another party. Because the defendant is not being forced into the lawsuit solely by reason of a claim for which there is no independent jurisdiction, it would not be an "unfair" use of the federal power to require that party to litigate a second claim deriving from the same nucleus of operative fact giving rise to the anchoring federal action. *See Aldinger v. Howard*, 427 U.S. at 14, 96 S.Ct. at 2420. Indeed, assuming the existence of a "common nucleus of operative fact," the procedural and jurisdictional alignment which exists when a plaintiff seeks to join a claim against a third party defendant already subject to federal jurisdiction would seem to clearly "permit[ ] the conclusion that the entire action before the court comprises but one constitutional 'case'." *United Mine Workers v. Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

Nothing in the Ninth Circuit authorities compels a contrary conclusion. As I have indicated, the question has been reserved (see n.7). The Ninth Circuit has neither held nor intimated that pendent jurisdiction may be invoked only when state and federal claims are raised against the same party defendant. Nonetheless, defendants argue that the exercise of pendent jurisdiction here would inappropriately permit plaintiff to circumvent the rule of *Ayala* merely by way of a fortuitous impleader; to allow plaintiff, so to speak, to slip his nonfederal claim in through *Ayala's* back door. The argument exalts form over substance. Article III speaks to *cases*, cases arising under federal law, and not to particular claims or parties. Nor does Article III prescribe the procedural mechanisms through which a constitutional "case" must be constructed. While as noted, the Ninth Circuit's objection to pendent party theory has never been precisely articulated, it must be premised on a sense that a "pendent party's" relationship to the federal question providing the anchoring source of federal jurisdiction is too attenuated to support the conclusion that the federal and state claims comprise "but one constitutional 'case'." That relationship is altogether altered, however, when the otherwise pendent party is brought into the "case," whether by impleader or otherwise, pursuant to an independent basis of federal jurisdiction. Even though no independent jurisdiction exists directly between the plaintiff and the impleaded party, the third party defendant's relationship to the "case" is jurisdictionally solidified, precluding the need to stretch the pendent power to the point of joining a completely new, nonfederal party. In this situation, joinder of claims, and not joinder of parties, is the object and effect of the doctrine. That plaintiff could not originally join the defendant appears, as a constitutional matter, to be irrelevant.[8] Given the

8. Defendants' additional argument, that to recognize pendent jurisdiction in this situation will open the "proverbial Pandora's box" to collusion between plaintiff and the federal defend-

procedural and jurisdictional alignment of the parties in this case, the court is persuaded by *Ortiz* that *Ayala* and its predecessors are not dispositive of the present motion. Rather, the court will look to the factors set forth in *Gibbs* to determine whether Article III will permit the exercise of jurisdiction over plaintiff's nonfederal claim against Rain Brook.

■ In *Gibbs*, the Supreme Court held that a district court has power under Article III to hear a pendent state claim if (1) the anchoring federal claim is of sufficient substance to confer federal subject matter jurisdiction; (2) the federal and state claim "derive from a common nucleus of operative fact" and (3) both claims, considered without regard to their federal or state character, are such as would ordinarily be tried in one judicial proceeding. 383 U.S. at 725, 86 S.Ct. at 1138. Plaintiff's FELA claim is unquestionably of sufficient substance to confer federal question jurisdiction; "the anchor claim is nonfrivolous, . . . [and] is not being used as a subterfuge to get into court on the state cause of action . . . ." *Ayala v. United States*, 550 F.2d at 1201 n.8. Plaintiff's state and federal claims, as well as Santa Fe's third party action, arose from the same occurrence—the collision between the locomotive and the grain truck—and therefore derive from a common nucleus of operative fact. Each claim asserted in this litigation alleges that the negligence of Santa Fe and/or Rain Brook proximately caused the collision and that one or the other or both of these parties are liable for the resulting damage. The actions and claims are inherently interrelated and, when considered without regard for their state or federal character, are such as would ordinarily be tried in one judicial proceeding. Under *Gibbs*, therefore, this court has power—in the constitutional sense—to hear plaintiff's claim against the defendant Rain Brook.

As *Aldinger* and *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) make clear, however, the existence of Article III power does not end the inquiry. Rather, beyond this "constitutional minimum"

> there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim in order to determine whether 'Congress in [that statute] has . . . expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim.

*Owen Equipment and Erection Co. v. Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402, *quoting Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. at 2422.

In *Aldinger*, the Supreme Court reasoned that because Congress had excluded political subdivisions from the "persons" answerable to claims brought under 42 U.S.C. § 1983, Congress had "by implication" negated the existence of pendent party jurisdiction over nonfederal claims raised against such entities in actions predicated upon Section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). 427 U.S. at 16–19, 96 S.Ct. at 2421–2423. The court engaged in a similar analysis in *Kroger*. After examining the legislative and judicial history of the federal diversity statute, the court emphasized that the "statute and its predecessors have consistently been held to require complete diversity of citizenship" and held that this history "clearly demonstrates a congressional mandate that diversity jurisdiction is not available when any plaintiff is a citizen of the same State as any defendant." 437 U.S. at 374, 98 S.Ct. at 2402, 2403. Because the district court's exercise of ancillary jurisdiction in that case had destroyed complete diversity, the Supreme Court ruled that to sustain such jurisdiction "would simply flout the congressional command." 437 U.S. at 377, 98 S.Ct. at 2404.

---

ant in impleading the desired third party, is likewise unconvincing. First, as defendants concede, there is absolutely no evidence of collusion between Potter and Santa Fe. Second,

when faced with a collusive joinder, the court is specifically authorized to dismiss the action pursuant to 28 U.S.C. § 1359.

Neither the FELA statute nor its judicial history reveals an express or implied congressional command negating pendent or ancillary jurisdiction in FELA based actions. To the contrary, those courts which have considered the question unanimously agree that the exercise of such jurisdiction is entirely consistent with the purposes of FELA. *See Philipson v. Long Island Rail Road*, 90 F.R.D. 644, 645 (E.D.N.Y.1981); *DeMaio v. Consolidated Rail Corp.*, 489 F.Supp. 315, 316 (S.D.N.Y.1980). By creating concurrent state and federal jurisdiction over FELA claims, 45 U.S.C. § 56, Congress specifically authorized FELA plaintiffs to choose between state and federal forums. A rule precluding the exercise of federal jurisdiction over interrelated but non-FELA claims might thwart this congressional purpose by enticing FELA plaintiffs into state rather than federal jurisdictions to avoid otherwise necessary piecemeal litigation. As one court has reasoned, "it was the clear intent of Congress to give an FELA plaintiff untrammeled choice between state and federal jurisdictions.... Given that purpose, it would be contrary to Congress' intent to make the federal less attractive than the state forum by denying the plaintiff the right to try his entire controversy in a federal forum." *DeMaio v. Consolidated Rail Corp.*, 489 F.Supp. 315, 316 (S.D.N.Y.1980). While the Supreme Court has stated that a statutory grant of exclusive federal jurisdiction bolsters the arguments favoring pendent or ancillary jurisdiction "since only in federal court may all of the claims be tried together," *Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. at 2422, the converse argument, that a grant of concurrent jurisdiction in some manner "expressly or by implication" precludes such jurisdiction, does not follow. Indeed, both *Aldinger* and *Kroger* involved controversies which could have been litigated in their entirety in state court. In neither case did the Supreme Court consider this fact as evidence of congressional intent. Moreover, such an argument assumes, contrary to the policy implicit in the congressional grant of federal question jurisdiction, that the plaintiff has no legitimate interest in bringing his claim into federal court. Properly read, *Aldinger* and *Kroger* call for more than congressional silence before a court can properly conclude that pendent or ancillary jurisdiction has been expressly or impliedly foreclosed. Given the absence of any evidence to the contrary, I conclude that Congress has neither expressly nor by implication precluded the exercise of pendent jurisdiction in actions brought under FELA.

Having determined that neither Article III nor statutory considerations prevent the exercise of pendent jurisdiction, the only question remaining is whether this court's judicial power *should* be used to adjudicate plaintiff's nonfederal claims. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).[9] Each consideration noted by the court is clearly present in the circumstances of this case and consideration of each factor counsels exercise of jurisdiction by this court. First, the whole question of the cause of the collision and therefore of Rain Brook's negligence is squarely before the court by reason of the third party action. To force plaintiff to litigate the identical issue in a state forum would result in a needless inconvenience to plaintiff and require an unjustifiable waste of valuable judicial time and resources. Second, plaintiff seeks to press his claim

9. In *Gibbs*, the Supreme Court identified several factors militating in favor of dismissal. In the Court's view, discretion to dismiss state claims should be exercised (1) when considerations of judicial economy, convenience, and fairness to the litigants are not present; (2) when a surer-footed reading of the applicable law can be obtained in state courts; (3) when state issues are found to predominate; or (4) when divergent state or federal theories of relief are likely to cause jury confusion. 383 U.S. at 726–27, 86 S.Ct. at 1139–1140. As discussed herein, none of these factors is present in the circumstances of this case.

against a party defendant already properly in federal court on a separate federal jurisdictional basis. Rain Brook is not being dragged into the case solely as a result of the nonfederal claim. Consequently, it would be neither unduly burdensome nor unfair to require Rain Brook to answer to plaintiff's claim in federal court. Third, plaintiff's state claim does not involve difficult or unsettled questions of state law; to the contrary, plaintiff's claim involves a simple negligence theory and derives from relatively uncomplicated factual allegations. Finally, plaintiff's state and federal claims are not based on divergent legal theories; both involve ordinary negligence claims and should pose little potential for jury confusion.

Having found that neither constitutional nor statutory considerations prevent the exercise of pendent jurisdiction over plaintiff's state claim, the increase in convenience, judicial economy and fairness to the litigants which would result from resolving plaintiff's claims in one judicial proceeding leads this court to conclude that it should exercise jurisdiction over plaintiff's entire action.

### CONCLUSION

The court has been forced to a detailed analysis of the applicable law so complex and subtle that in the end only the necessity of ruling rather than confidence in the results leads to an order. This pilpul-like examination (*i.e.*, a hairsplitting refinement of applicable doctrine) is necessitated by a doctrine of pendent party jurisdiction restricted to this circuit.

Our Constitution has always been viewed as a great document of practical governance as well as the embodiment of our most precious values. *Gibbs* taught that Article III, like the balance of our fundamental charter, was a practical grant of power and questions under that article were to be addressed with due regard to the limited nature of federal court jurisdiction, but in an objective real world context which addresses the relative interests and needs of the parties. Given precedent, the question presented here has been resolved in a manner akin to that employed by medieval monks resolving the issue of the corporality of angels and thus the number capable of dancing on the head of a pin. Questions of jurisdiction need not be divorced from reality and I for one urge those courts by whose decisions I am bound to consider anew the issue of pendent party jurisdiction.

In the instant case, the motion to dismiss is denied.

IT IS SO ORDERED.